UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED

2002 OCT -7 A 9: 26

U.S. DIST. COURT CLERK
EAST. DIST. MICHIGAN
DETROIT

BLOOMFIELD HILLS SCHOOL DISTRICT,

    Plaintiff,

v.

DR. JANE DOE and JOHN DOE,

    Defendants.
_____/

No. 02-70414

Hon. John Corbett O'Meara

## OPINION AND ORDER

This case involves a request by Defendants Dr. Jane Doe and John Doe (referred to as "the parents") for an administrative due process hearing concerning their son (referred to as "the student") under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400. The student attended Andover High School in Bloomfield Hills (referred to as the "District") until he was withdrawn from the District and enrolled in a private school by his parents. The parents seek reimbursement for the costs of the private educational placement which they selected for their son. On September 14, 2001, the parents' request for an administrative hearing was dismissed by a Local Hearing Officer ("LHO"). The parents then appealed the LHO's decision to the State Level Review Officer ("SRO") who reversed the decision of the LHO and ordered that the parents be given a due process hearing. The SRO concluded that there were some material facts in dispute and equitable considerations necessitating a due process hearing. The Plaintiff in this case, the District, requests that the decision of the SRO be overturned and that the decision of the LHO be reinstated. The Defendants (the parents) request in their

13

response (and not a separate summary judgment motion) that the decision of the SRO be affirmed and that we remand for the due process hearing.[1]

## BACKGROUND ON IDEA

The IDEA was designed to give children with disabilities a free appropriate public education ("FAPE") designed to meet their unique needs. IDEA pertains to the public education of children with disabilities and conditions federal assistance for school programs upon participating states' compliance with the substantive and procedural goals of the Act. Before determining a child's eligibility under IDEA, a District is required to conduct an individual evaluation of the student. 20 U.S.C. §1414(a)(1). In Michigan, this evaluation is conducted by a Multidisciplinary Evaluation Team, which is then reviewed by the student's Individualized Educational Program Team, including the child's parents, for a determination as to the child's eligibility for services. 20 U.S.C. §1414(c). Disputes concerning a child's eligibility for services are addressed through administrative due process hearings. 20 U.S.C. §1415(f). The Michigan Administrative Code establishes a two-tiered process of administrative due process hearings: first, a proceeding before a LHO and second, an appeal to a SRO.

Furthermore, under IDEA, the District has a duty to identify suspected disabled students ("child find duty"), evaluate them in all suspected areas of disability and, if eligible, propose through an Individualized Educational Program Committee ("IEPC") including parental

---

[1] Technically, the parents should have filed their own summary judgment motion seeking a remand. In their response to the District's summary judgment motion, they ask that the decision of the SRO be affirmed and that we remand for a hearing. At oral argument, defense counsel explained that he would submit such a remand order if the Court denied the District's summary judgment motion. For the reasons discussed in the text above, the Court denies the District's summary judgment motion and sua sponte remands for a due process hearing.

involvement, an Individualized Educational Program ("IEP") providing special education services meeting the child's unique needs. §1412(a)(3). If the parents or District disagree, a due process hearing can be requested. Here, the SRO, while identifying several material issues of fact, found there was a material issue of fact whether the District violated its "child find duty" and that such a violation could be an equitable consideration in allowing reimbursement.

## BACKGROUND FACTS

In May of 1998, the student was determined to be eligible for services under Section 504 of the Rehabilitation Act of 1973, which requires accommodations of disabled student.[2] At that time, a Section 504 Plan was created which was signed by the student's parent. The Section 504 Plan was subsequently revised in January of 1999. Once again, the parent signed the Plan in agreement and indicated that she had been advised of her rights and had received a copy of the Section 504 Handbook.

At the beginning of the 1999-2000 academic year, the District conducted an evaluation of the student to determine if he was eligible for services under the IDEA for "Learning Disabled." (At this time, no one did an evaluation to see if the student would be eligible for services under the IDEA for having an "Emotional Impairment.") The parent provided her consent to this evaluation on September 1, 1999. After the evaluation, a Multidisciplinary Evaluation Team recommended that the student was not eligible for special education under the IDEA and issued a report documenting this on October 20, 1999. The Individualized Education Program Team adopted this recommendation and issued a report dated October 20, 1999. The student's father

---

[2] The student was diagnosed with Attention Deficit Disorder with hyperactivity in addition to a language processing disorder. (Exhibit A to Pl.'s motion.)

signed this report, referred to as an IEP, in agreement and indicated that he had been informed of his and the student's rights.

In early April, 2000, the student experienced a mental breakdown. As a result of this breakdown, the student was briefly hospitalized. In a letter dated April 11, 2000, the parent indicated that she wished the student to return to school to complete the year. As part of the Student's return, a meeting was conducted on April 14, 2000 between the parent and the District's staff. Minutes from this meeting (which the parents argue are incomplete) demonstrate that the District wished to conduct a new evaluation of the student to determine if he was eligible for special education under IDEA for "Emotional Impairment." The parent, however, stated that she did not want her son to be evaluated or to be considered for special education at this time because the child's psychiatrist had advised them that his being evaluated at this time could impair his health. The parent refused to provide her consent to the evaluation but states that, had she been informed of what the District needed for this evaluation, she might have allowed a limited evaluation. The parent also indicated that she would like to keep all options open for the future and that she was considering private schools in New England. The parent explains that after her son's mental breakdown, she wanted the District to revise its Section 504 plan to help her son complete the last 6 weeks of the school year – that was her top priority.

At the parent's request, the District revised the student's Section 504 Plan. The parent signed an agreement and indicated that she had been informed of her rights. The parent has acknowledged that the Section 504 Plan finally provided the student with the accommodations she had been requesting and that she was "pleased with the handling of [the Student's] last six

weeks at Andover." (Parent's Brief to the LHO, p. 15, Ex. K). The parent explains in her affidavit (attached to the parents' response, exhibit A), that after suffering the nervous breakdown in March 2000, her son finally received the safeguards that she had been seeking for about 5 years.

According to the District, after the student completed the school year, he was withdrawn from the District without any notification from the parents. The parents maintain that at the April 2000 meeting they had mentioned that they were considering private school for their child after he completed the last six weeks of the current school year. The parent then enrolled the student in a private school in Massachusetts called Winchendon. A letter dated October 17, 2000 from the parent to a member of the District's Board of Education explains the parent's decision to enroll the student in a private placement. (Exhibit L to the District's brief.) The October 17, 2000 letter also indicates that Winchendon was not appropriate for the student and that he had been moved to a "Psychotherapeutic School" in Dahionega, Georgia called Hidden Lake Academy on October 16, 2000. In this letter, the parents request financial reimbursement for some of their expenses.

On October 26, 2000, Ms. Carolyn Packard, the District's Director of Special Education, spoke to the parent concerning options for the student to return to the District. The parent followed this conversation with an October 27, 2000 letter that, while acknowledging that the student received the appropriate accommodations at the end of the 1999-2000 school year, rejected consideration of the options provided by Mrs. Packard. (Ex. J to District's brief). In this letter, the parents asks: "Where is the accountability on the part of the District in not having a built in safeguard system that could have prevented the devastation of a vulnerable student? It

took his decompensation at school to get the safeguards in place for him and hopefully others. " Ms. Packard responded with a letter on October 30, 2000 indicating that the District "remains ready, willing, and able to comprehensively evaluate the Student and convene an IEP Team meeting upon your request." (Ex. M to District's brief). The parents contend that it was too late.

On November 20, 2000, the District received a letter from the parent in which she refused to participate in finding a suitable placement for the student within the District. Ms. Packard then responded in a letter dated November 21, 2000 which reminded the parent that both she and her husband had blocked the District's efforts to complete a comprehensive evaluation of the Student in April of 2000. (Ex. 0 to District's brief). Ms. Packard also restated the District's willingness to evaluate the Student and conduct an IEP meeting. Again, the parents claim that it was too late.

The most significant genuine issues of material fact found by the SRO were whether the parents received proper notice of their rights under the IDEA procedural provisions; whether the District breached its duty to evaluate the child in all suspected areas of handicap ("child find" duty); whether the parents repeatedly advised the District that the program provided to the student was not working (thus denying FAPE under IDEA); whether the parents did, in fact, advise the District that they were going to place the child in private education and if this was done more than ten days before the move was made; whether the parents purposely interfered with the District's opportunity to formulate FAPE, or whether the parents properly refused the District's request to evaluate based on the professional medical opinion that an evaluation at this time (after the child suffered a nervous breakdown) would be detrimental to his health; whether the parents were willing to consent to the District conferring with the child's psychiatrists and

would have considered consenting to a limited evaluation had that been explained to them; and finally, whether the parents' unwillingness to allow an IEP evaluation at the late date (after the student's breakdown on March 31, 2000) requested by the District followed a long course of unavailing parental requests for assistance. In sum, the SRO felt there were equities that should be considered at a due process case.

## STANDARD OF REVIEW

In reviewing the complaint, the Act provides that a court "shall receive the record of the [state] administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." §§ 1415(e)(2) (emphasis added). There are two parts to a court's inquiry in suits brought under 20 U.S.C. §§ 1415(i)(2). First, the court determines whether the state has complied with the procedures set forth in the IDEA. See Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982). Second, the court assesses whether the IEP developed through the Act's procedures is reasonably calculated to enable the child to receive educational benefits. See id. at 206-07.

This court reviews both the procedural and substantive matters under a standard of "modified de novo review." Renner v. Bd. of Educ., 185 F.3d 635, 641 (6th Cir. 1999). This standard of review stems from the Supreme Court's holding that courts must give "due weight" to the state administrative proceedings. Rowley, 458 U.S. at 206. In Rowley, the Court looked at the procedural safeguards in the IDEA that indicated that a court "shall receive the record [sic] of the [state] administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as

the court determines is appropriate." Id. at 205 (quoting 20 U.S.C. §§ 1415(e)(2)). The Court held that "[t]he fact that §§ 1415(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings." Id. at 206. A court should defer to the administrative findings only when "educational expertise" is relevant to those findings and the decision is reasonable. Burilovich v. Bd. of Educ., 208 F.3d 560, 567 (6th Cir. 2000). By so deferring, "due weight" will have been given to the state administrative proceedings.

In this case, the District asserts that such deference is not necessary as the decision by the SRO did not require any "educational expertise." Therefore, the District argues that this Court should conduct a de novo review. Conversely, the parents argue that the SRO's decision was dependent on educational expertise in the federal and state regulations and that the Court should therefore defer to him. While the Court tends to agree with the District that we should conduct a de novo review, because the SRO was merely applying the law to a procedural question of whether there should be a hearing and was not using any educational expertise per se, nonetheless, even under a de novo review, the SRO's decision is affirmed.

Significantly, the Sixth Circuit has held that, when there is a conflict between the holdings of the local and state hearing officers, the court must defer to the state hearing officer's decision in reviewing the record on appeal. See Renner v. Bd. of Educ., 185 F.3d 635, 641 (6th Cir. 1999) (holding that court must defer to the final decision of the state authorities). Therefore, in applying a de novo review, the Court is cognizant of the SRO's decision that a due process hearing is necessary and will defer to him over the LHO's denial of a due process hearing.

## LAW AND ANALYSIS

The District contends that the parents unilaterally placed their child in private schooling and therefore are barred from seeking reimbursement. More specifically, the District claims that (1) the parents' refusal to consent to an evaluation of the student bars any claim under IDEA and (2) the parents' failure to provide notice to the District of their intention to remove the student from the District and educate him privately at public expense bars their claim. The relevant regulation, 34 C.F.R. § 300.403, states in pertinent part as follows:

> (c) <u>Reimbursement for private school placement</u>. If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency[3], enroll the child in a private preschool, elementary, or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the *agency had not made FAPE available to the child in a timely manner* prior to that enrollment and that the private placement is appropriate.

[emphasis added]. Here, as the SRO found, there are material facts in dispute whether the District made FAPE available in a timely matter. As discussed supra, according to the parents, there was a long, frustrated history of their attempts to consult with the District, resulting in the eventual removal of their son after notice due to his suffering a nervous breakdown. The parents maintain that their decision to remove their son after he suffered a nervous breakdown was not based on unilateral action by them, but based on the failure of the District to timely provide FAPE, resulting in the breakdown of their son.

---

[3] Despite the reference in the regulations to children who previously were receiving special education from the district, hearing officers retain their authority as recognized in Burlington, infra, to award appropriate relief for children who did not previously receive such services. See Federal Register, Vol. 64, No. 48, at p. 12602 (March 12, 1999).

The regulations continue in relevant part:

> (d) <u>Limitation on reimbursement</u>. The cost of reimbursement described in paragraph (c) of this section *may* be reduced or denied –
> (1) If – (i) At the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP team that they were rejecting the placement proposed by the public agency to provide FAPE to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or (ii) At least ten (10) business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in paragraph (d)(1)(i) of this section;
> (2) If, prior to the parents' removal of the child from the public school, the public agency informed the parents, through the notice requirements described in §§ 300.503(a)(1), of its intent to evaluate the child (including a statement of the purpose of the evaluation that was appropriate and reasonable), but the parents did not make the child available for the evaluation; or
> (3) Upon a judicial finding of unreasonableness with respect to actions taken by the parents.

[emphasis added.]

The District relies on part (d) of the regulations to argue that the parents never informed the District that they were rejecting the placement proposed by the District to provide FAPE and intending to enroll their child in private school and that they did not give written notice within ten days. The District also argues that the parents refused to allow their child to be evaluated at the April 14, 2000 meeting for IEP. Yet, the District fails to cite part (c) of the regulations (discussed below) and fails to acknowledge that part (d) uses the word "may" and not "shall," thereby implying that there are equitable or other factors that can be considered.

Part (c) states:

<u>Exception.</u> Notwithstanding the notice requirement in paragraph (d)(1) of this section, the cost of reimbursement may not be reduced or denied for failure to provide the notice if –
(1) The parent is illiterate and cannot write in English; (2) Compliance with

paragraph (d)(1) of this section would likely result in physical or serious emotional harm to the child; (3) The school prevented the parent from providing the notice; or (4) The parents had not received notice, pursuant to section 615 of the Act, of the notice requirement in paragraph (d)(1) of this section.

The SRO found that there were material facts in dispute concerning several of these exceptions, namely whether there would have been emotional harm to the student to undergo an IEP evaluation after he suffered his nervous breakdown on March 31, 2000. Exhibit B to the parents' response is an affidavit from the student's doctor explaining that having the student undergo testing at that point in time could seriously impair him emotionally.[4] The SRO also found there was a question whether proper prior notice of IDEA rights was given regarding the April 14, 2000 meeting, because the "notice of rights" was given after the meeting had started and after many decisions had apparently been made. See 34 C.F.R. § 300.503(a). Additionally,

---

[4] In the District's reply brief, it argues that the Court should not consider this "additional evidence" not before the SRO consisting of Exhibit A, an affidavit from one of the parents providing in great detail the attempts and frustration that this parent had with the District in trying to get FAPE for her son, and Exhibit B, an affidavit from the student's doctor explaining why the student should not undergo testing immediately after he suffered his nervous breakdown. Yet, the District wants the Court to conduct a de novo review, and IDEA expressly provides that the Court can in its discretion consider additional evidence. "[T]he determination of whether to allow additional evidence under §§ 1415(e)(2) must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo*." Patricia P. v. Bd. of Educ. of Oak Park, 203 F.3d 462 (7th Cir. 2000). While the parents presumably could have submitted these affidavits in their brief to the LHO and SRO requesting a due process hearing, the SRO considered the same arguments now presented in these affidavits – the parents made the same arguments in their briefs to the SRO and LHO but did not attach affidavits. Furthermore, the affidavits only confirm the reasons that the SRO found in ordering a due process hearing. They do not really provide any "new" evidence per se (just a new vehicle for the evidence). Interestingly, the District requests that, if the Court considers the affidavits, it should be allowed to conduct discovery to test the veracity and foundation of these affidavits. The Court finds that such a challenge is more appropriate at a due process hearing before the administrative law judge. It seems like a waste of resources for this Court to conduct a hearing to decide if there are factual issues or equitable considerations that would merit a remand to consider the exact same issues.

the SRO was concerned that the District may have violated its "child find" duty in not initially (and timely) evaluating the student for the disability of Emotional Impairment (another suspected area of disability), where the District has a duty to evaluate the student for all potential impairments. See Justin G. v. Bd. of Ed. of Montgomery County, 148 F. Supp.2d 576 (D. Md. 2001) ( holding that failing to properly and timely evaluate student is a factor to be considered in reimbursement cases); Warren C. v. Cumberland County School Dist., 190 F.3d 80, 87 (3rd Cir. 1999) (finding district's evaluations not to comply with IDEA for failure to meet the requirement that a child be "assessed in all areas related to the suspected disability."). The SRO was also concerned by the parents' allegation that the minutes of the April 14, 2000 meeting were not complete. Finally, the SRO explained that reimbursement was an equitable matter (citing Burlington School Committee v. Dept. of Educ., 471 U.S. 359 (1985)) and could be awarded even if the parents failed to provide the required notice and refused to allow an evaluation of their child. (Again, the word "may" and not "shall" is used in the regulations.)

The Sixth Circuit in Doe v. Metropolitan Nashville Public Schools, 133 F.3d 384 (6th Cir. 1998) explained that a "unilateral" placement of a child in private school is not the end of the analysis:

> There is a distinction, though, between parents who act unilaterally after consultation with the school system, and those who act unilaterally without any dialogue with the school. [citation omitted]. In cases where the lack of dialogue stems from the school district's failure to conduct sufficient "child- find," reimbursement may be appropriate. ***Put another way, reimbursement after a unilateral placement can be appropriate, upon a finding of sufficiently serious procedural failures by the school district.*** [citations omitted]. Even though the Does had some general knowledge of the availability of services, the failure by Metro to apprise [sic] Does of their specific procedural and substantive rights could make reimbursement a proper remedy.
> Therefore, we reject Metro's claims that the Does' general knowledge meant

-12-

as a matter of law that they were not entitled to reimbursement. Mere general knowledge is not sufficient to foreclose this inquiry, particularly when there is evidence of procedural failures by the school district. The extent of the Does' knowledge needs to be determined, as well as the degree of Metro's laxity. Then, these two factors needed to be weighed against each other, with due weight given to the ALJ's determinations. The ALJ weighed the factors, of course, but the district court should have performed its own analysis, based on all available evidence, rather than merely adopting on summary judgment the ALJ's evaluation of the administrative record. This will be the district court's task on remand.

[emphasis added].

Finally, in Tucker by Tucker v. Calloway County Bd. of Educ., 136 F. 3d 495 (6th Cir. 1998), Andress v. Cleveland Indep. Sch. Dist., 64 F.3d 176 (5th Cir. 1995) and Patricia P. v. Bd. of Educ. of Oak Park, 203 F.3d 462 (7th Cir. 2000) – cases cited by the District to support its contention that unilateral action by the parents forfeits their rights for reimbursement – due process hearings were conducted before the decision was made to deny reimbursement. In other words, in those cases, the parents were at least given an opportunity to present their case.

The briefs submitted by both parties are passionate and long, and it is important to remember what is at stake here. The parents merely want a due process hearing. Nothing substantive relating to IDEA reimbursement has occurred yet. While the parents might ultimately lose at the due process hearing for the reasons articulated in the District's brief (namely that the parents refused to consent to an evaluation of the student and failed to provide notice of their intention to remove the student from the District and educate him privately at public expense), nonetheless, as explained supra, based on (1) the pertinent statute and regulation (which the District only selectively quotes) allowing for exceptions (or equitable considerations); (2) the Sixth Circuit case Doe which states that unilateral action is not the end of the inquiry; (3)

standard of review where there is deference to the SRO's opinion over the LRO's opinion; and (4) the parent's affidavit (attached as exhibit A to their response) explaining in detail their struggle with the District, there are potential equitable considerations in which the parents could make out a case for reimbursement (or partial reimbursement) for the private school costs. Therefore, the Court agrees with the SRO and believes the parents should be given a due process hearing.

### ORDER

It is hereby **ORDERED** that Plaintiff's motion for summary judgment is **DENIED**. This case is remanded for an administrative due process hearing pursuant to the IDEA.

John Corbett O'Meara
United States District Judge

Date: **OCT 07 2002**

PURSUANT TO RULE 77(d), FRCivP
COPIES HAVE BEEN MAILED TO:
Robert A. Lusk
Mary Love

ON October 7, 2002

DEPUTY COURT CLERK